**In the Matter of ADOPTION OF T.R.M., an Indian Child and J.Q. (Natural Mother), Appellant,**

v.

**D.R.L. and E.M.L. (Adoptive Parents), Appellees.**

No. 3–384A81.

Court of Appeals of Indiana, Third District.

Feb. 26, 1986.

---

Joanne Tapocsi, Valparaiso, Barry Levine, Traverse City, Mich., for appellant.

Hugo E. Martz, Guardian ad Litem, Steven L. Langer, Valparaiso, for appellees.

GARRARD, Judge.

T.R.M. is an Indian child and an enrolled member of the Oglala Sioux Tribe at the Pine Ridge Reservation.

She was born June 14, 1981 at Hot Springs, South Dakota. Shortly thereafter her mother placed her with the appellees, D.R.L. and E.M.L. and executed a form of consent to adoption.

D.R.L. and E.M.L. reside in Porter County, Indiana and took the child there. In April 1982 T.R.M.'s natural mother, J.Q., petitioned the Porter Circuit Court for habeas corpus seeking the return of T.R.M. That petition was denied by the court on October 21, 1982. Meanwhile, on September 22, 1982 D.R.L. and E.M.L. filed their petition with the Porter Circuit Court for the adoption of T.R.M. The adoption petition was heard on September 28, 1983 and granted November 28, 1983. At the adoption hearing the evidence introduced in the habeas corpus proceeding was made a part of the record.

On appeal J.Q. presents sixteen issues for review. They relate primarily to the court's application of the Indian Child Welfare Act (ICWA), 25 U.S.C. Section 1901 et seq. (1978) to this proceeding.

■ Congress enacted the ICWA for the protection of Indian children and the promotion of the integrity and continued existence of the Indian tribes upon finding:

"(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;

(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families."

25 U.S.C., Section 1901.

Thus, pursuant to the Supremacy Clause, Art. VI, Clause 2, Constitution of the United States, Indiana law must defer to the ICWA.

The act in essence provides exclusive or preferential jurisdiction of child custody proceedings involving Indian children in the tribe (Section 1911); accords full faith and credit to the judicial proceedings of a tribe (Section 1911); provides a right of counsel to indigent parents (Section 1912); imposes the requirement that any party seeking a termination of parental rights establish "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the break up of the Indian family and that these efforts have proved unsuccessful;" (Section 1912)

and prohibits termination of parental rights except upon proof beyond a reasonable doubt "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (Section 1912). In addition the act imposes stringent requirements upon the validity of a consent to adoption and makes all valid consents freely revocable at any time prior to the entry of a final decree of termination or adoption (Section 1913).

The evidence introduced at the adoption hearing disclosed that T.R.M.'s natural mother had a history of alcohol and drug abuse and that her parenting record was not good. On the other hand, we have searched the record in vain for any evidence demonstrating that active efforts were made to provide remedial services and rehabilitative programs to her as required by 25 U.S.C. Section 1912.

■ There is, however, a more basic reason which requires that we reverse the trial court. The purpose of Congress in the ICWA is clear that questions concerning the adoption of and termination of parental rights to Indian children must be deferred to tribal determination in certain instances.

25 U.S.C. Section 1911 expressly provides:

"(a) Exclusive jurisdiction

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

"(b) Transfer of proceedings; declination by tribal court

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* That such transfer shall be subject to declination by the tribal court of such tribe.

(c) In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

(d) Full faith and credit to public acts, records, and judicial proceedings of Indian tribes

The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity."

During the adoption hearing the Oglala Sioux Tribe, Pine Ridge Reservation, who had intervened in the proceeding (25 U.S.C., Section 1911(c)) introduced in evidence the order of its Tribal Court, entered September 21, 1982 making T.R.M. a ward of the Tribal Court. No issue was presented or evidence introduced to controvert the order or to establish that it was not entitled to full faith and credit pursuant to 25 U.S.C., Section 1911(d).

Thus, pursuant to the second sentence of 25 U.S.C., Section 1911(a), exclusive jurisdiction to consider the adoption and termination of the mother's parental rights was vested in the Oglala Sioux Tribal Court. The dissent would avoid this result by asserting that the Porter Circuit Court had already acquired jurisdiction by the time the Tribal Court entered its order of wardship. If the circuit court had acquired jurisdiction of the proceeding for adoption and to terminate J.Q.'s parental rights when

the Tribal Court entered its order, we would agree. But that was not the case. That petition was not filed with the circuit court until the day *after* the Tribal Court entered its order.

■ The dissent must therefore depend upon the pendency of the habeas corpus petition for its determination that Indiana already had acquired jurisdiction when the tribal wardship was decreed. Again, we agree that whatever jurisdiction the circuit court acquired in the habeas corpus proceeding it could retain.

Basically the purpose of the writ is to bring the person in custody before the court so that the legality of her restraint can be determined. *State ex rel. O'Leary v. Smith* (1941), 219 Ind. 111, 37 N.E.2d 60. Application of the writ to situations involving the custody of children is governed by IC 34-1-57-25 which provides:

> "Writs of habeas corpus shall be granted in favor of parents, guardians, and spouses; and to enforce the rights and for the protection of infants and insane persons; and the proceedings shall, in all such cases, conform to the provisions of this chapter."

The prior version of this statute, which after the first semicolon is identical to the present form, was construed to afford the court in a habeas corpus proceeding jurisdiction to determine who should have custody of the child based upon the welfare and best interests of the child. *Addington v. Retter* (1922), 192 Ind. 268, 134 N.E. 888. Thus, the circuit court had jurisdiction to make a determination of custody. It did not, however, in that proceeding have jurisdiction either to grant an adoption or to terminate the parental rights of a natural parent. Those matters are separate and distinct from the question of physical custody.

It follows that the Porter Circuit Court was without jurisdiction to terminate the parental rights of the natural mother and grant the adoption of T.R.M.

The judgment is therefore reversed and the case is remanded with instructions to transfer the same to the Oglala Sioux, Pine Ridge Reservation, Tribal Court.

Reversed and remanded.

HOFFMAN, J., concurs.

STATON, P.J., dissents and files separate opinion.

STATON, Presiding Judge, dissenting.

I dissent. The Oglala Sioux Tribal Court can not usurp the jurisdiction of the Porter Circuit Court by issuing an order making T.R.M. a ward of its Court. Jurisdiction over T.R.M. was obtained by the Porter Circuit Court in April, 1982 in a habeas corpus proceeding. While the habeas corpus petition was pending, the Oglala Sioux Tribal Court entered an order dated September 21, 1982 making T.R.M. a ward of its Court. Also during the pendency of the habeas corpus proceeding, D.R.L. and E.M.L. filed their petition for the adoption of T.R.M. The habeas corpus petition was denied on October 21, 1982, but the Porter Circuit Court maintained its jurisdiction because it still had before it the petition for adoption filed by D.R.L. and E.M.L. The Porter Circuit Court granted the petition for adoption on November 28, 1983. The federal statute cited by the Majority does not permit the Oglala Sioux Tribal Court to intervene in the Porter Circuit proceedings and snatch away its jurisdiction.

25 U.S.C. § 1911(a) provides that "Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child." In order for the "exclusive jurisdiction" to ripen, the order of wardship would had to precede the change of residence or domicile of T.R.M. and would had to precede jurisdiction of the Porter Circuit Court over the habeas corpus proceeding. T.R.M. had been living with D.R.L. and E.M.L. in Porter County since June, 1981, shortly after her birth outside the reservation. The tribal wardship order was issued over a year later and after the Porter Circuit Court has assumed personam jurisdiction.

25 U.S.C. § 1911(b) provides for the transfer of jurisdiction from a state court to the tribal court only "... in absence of good cause to the contrary." The record is replete with good cause not to transfer jurisdiction to the tribal court. J.Q., the natural mother, had a long history of drug and alcohol abuse. She had several divorces from the same man and intended to marry him again. She had been on a drug and alcohol rehabilitation program without success. She had been placed in jail on fifteen different occasions and had attempted to commit suicide at least four times. Her last attempt at suicide was in 1981. Dr. John Harris, Associate Professor of psychology at Valparaiso University testified that in his opinion beyond a reasonable doubt that continued custody of T.R.M. by J.Q. would likely result in serious emotional, physical harm to T.R.M. Similar testimony was given by Irene Yankauskas, a child protective service worker for the Porter County Department of Public Welfare. The Porter Circuit Court had ample "good cause" not to transfer jurisdiction to the tribal court. (see *People in Interest of S.R.*, 1982, 323 N.W.2d 885) The best interest of T.R.M., now four years old, was served by granting the petition for adoption. I would affirm the judgment of the Porter Circuit Court.